UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-204-MOC-DSC

| | |
|---|---|
| YANIQUE WHITE, *by and through her legal guardians,* Michelle and Deryck White, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) **ORDER** ) |
| AETNA LIFE INSURANCE CO., | ) ) |
| Defendant. | ) ) ) |

**THIS MATTER** comes before the Court on a Motion to Dismiss for Lack of Jurisdiction, filed by Defendant Aetna Life Insurance Company. (Doc. No. 5). This Court held a hearing on the motion on December 2, 2020.

**I.     BACKGROUND**

On February 28, 2020, Plaintiff Yanique White, by and through her legal guardians Michelle and Deryck White, filed this case against Defendant Aetna Life Insurance Company in the Union County Superior Court in Union County, North Carolina. See (Compl. Doc. No. 1-1). On April 2, 2020, Defendant timely removed the action to this Court based on diversity of citizenship under 28 U.S.C. § 1332. See (Notice of Removal, Doc. No. 1). The Complaint alleges that Deryck, Michelle, and Yanique White are all citizens of the State of North Carolina, residing in Matthews, North Carolina. Plaintiff Yanique White is incapacitated, and her parents Michelle White and Deryck White are her legal guardians. The Complaint further alleges that Defendant Aetna is an insurance company organized and existing under the laws of the State of

1

Connecticut, with its principal place of business in Hartford, Connecticut.

This action involves a dispute regarding coverage under a group health insurance policy between Defendant and the City of New York (the "Policy"). Deryck White was insured under the policy. The facts underlying this lawsuit show that Plaintiff Yanique White suffered from a brain injury at birth in 1998, and she has been in a persistent, vegetative state since then. (Doc. No. 1-2 at ¶ 5). At the time the Complaint was filed, Plaintiff was 21 years old. (Id. at ¶ 6). Throughout her life, Plaintiff has required 24-hour skilled nursing care and close surveillance. (Id. at ¶¶ 6, 22). Plaintiff has been diagnosed with the following medical conditions: hypoxic/anoxic brain injury, persistent vegetative state, spastic quadriplegia, seizure disorder, scoliosis, osteopenia, chronic right hip dislocation, chronic lung disease, gastro-esophageal reflux disease, and incomplete eye closure with history of exposure keratitis. (Id. at ¶ 7). She suffers from violent seizures, and she depends on a tracheostomy, tracheostomy tubes, and ventilator to breathe. (Id. at ¶¶ 6, 7, 8). If Plaintiff's tracheostomy or ventilator were to malfunction, she would be unable to breathe and would die. (Id. at ¶¶ 9–10). Plaintiff also regularly experiences mucus plugs that form and impede her breathing. (Id. at ¶ 11). If the mucus plus are not readily identified and treated, Plaintiff would be unable to breathe and would die. Because Plaintiff cannot clear her own oral and tracheal secretions, she requires her airway to be suctioned multiple times a day. (Id. at ¶¶ 11–12). She also requires emergency trach-tube replacement and constant oral suctioning due to constant drooling. (Id. at ¶¶ 13–14). Plaintiff cannot communicate, walk, move, or bear weight. (Id. at ¶ 16). She is fed through a gastronomy tube and provided water through boluses three times a day. (Id. at ¶ 17). Plaintiff has numerous skilled nursing needs, including constant monitoring for wheezing, hypoxia, respiratory congestion, and signs of respiratory distress, and immediate emergent skilled

treatment if these signs appear; tracheostomy care; tracheal, oropharyngeal, and nasopharyngeal suctioning; monitoring for frequent and dangerous seizure activity and prompt administration of appropriate anti-seizure medications, positioning and repositioning during tube feeding; and regular monitoring of her entire integumentary system for signs of infection and sores. (Id. at ¶ 23). Without skilled nursing care, Plaintiff is at serious risk for serious medical complications, morbidity, and death, and there has been no marked improvement in her medical condition since infancy. (Id. at ¶¶ 24–25).

At all relevant times, Plaintiff's father was a New York City employee, insured under a group health policy issued by Defendant. (Id. at ¶ 26). Plaintiff has been insured under the Policy since birth as a dependent. (Id. at ¶ 27). For most of her life, Plaintiff has received in-patient treatment at a skilled nursing facility specializing in the treatment of individuals with conditions like Plaintiffs. (Id. at ¶ 30). From Plaintiff's infancy until April 2015, when Plaintiff was 17 years old, Aetna paid the required health insurance benefits for Plaintiff's medical care and for the 24-hour skilled nursing care at the skilled nursing facility where she resided in New York. (Id. at 31). On some unspecified date in 2015, Plaintiff's parents moved from the New York area to Matthews, North Carolina. Plaintiff alleges that "[o]n or before September 2015, the White family resolved to dedicate a space in their home in Matthews, North Carolina to the care of Yanique White," they outfitted their home to meet Plaintiff's medical needs, and they "planned to transfer Plaintiff to their medically-fitted home on or about September 2015." (Id. at 32–34).

On or before August 27, 2015, while Plaintiff was still residing in the skilled nursing facility in the State of New York, Plaintiff's parents sought pre-authorization from Defendant for 24-hour, in-home nursing care for Plaintiff. (Id. ¶¶ 32, 34–35). Despite that Plaintiff's needs

3

had not changed at all, and contrary to medical professionals' opinions that Plaintiff still required 24-hour, skilled in-home nursing care, Defendant denied Plaintiff's pre-authorization claim for such care, claiming that such care was not medically necessary. (Id. ¶¶ 36–38). Then, immediately after the August 2015 request for pre-authorization, and despite no improvement by Plaintiff or any significant change in her vegetative condition, Defendant suddenly also denied all future, in-patient coverage for the remainder of Plaintiff's time at the skilled nursing facility where she resided in New York. (Id. ¶ 37). In September 2015, Plaintiff's parents moved her from the skilled nursing facility in New York to their home in Matthews, North Carolina. (Id. ¶ 42). After Defendant denied Plaintiff's claims, Plaintiff submitted an internal appeal to Aetna under the Policy's optional appeals process. (Id. ¶¶ 49–59; Policy's New York Complaint and Appeals Health Rider at 4). On February 28, 2017, Aetna upheld the denial. (Id. ¶¶ 68–74).

While living in her parents' home in North Carolina, Plaintiff has been under the care of Bayada Pediatrics, a subdivision of Bayada Home Health Care. (Id. at ¶ 43). Bayada provides 24-hour, in-home skilled nursing care for Plaintiff. (Id. at ¶ 44). The Whites continue to seek pre-authorization from Defendant to have 24-hour, skilled nursing care provided by Bayada, and Defendant continues to deny the requests, alleging that the care provided for Plaintiff for seventeen years is no longer medically necessary. (Id. at ¶¶ 46–48).

On February 28, 2020, Plaintiff filed this action in North Carolina state court, asserting claims against Defendant for breach of contract, breach of the covenant of good faith and fair dealing, bad faith, and violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. 75-1.1 et seq. (Id. ¶¶ 75–109). Defendant removed the action to this Court on April 4, 2020. On May 26, 2020, Defendant filed the pending motion to dismiss, seeking dismissal of this action for lack of personal jurisdiction under Federal Rule of Civil Procedure

4

Rule 12(b)(2), and, alternatively, under Rule 12(b)(6), on the grounds that this action is time-barred and for failure to state a claim.  In its motion to dismiss for lack of jurisdiction, Defendant alleges that it lacks the requisite minimum contacts with North Carolina and, therefore, this action should be dismissed.  Plaintiff has opposed the motion to dismiss, and this Court held a hearing on the pending motion on December 2, 2020.  This matter is therefore ripe for disposition.

## II. STANDARD OF REVIEW

Rule 12(b)(2) provides for dismissal for "lack of personal jurisdiction."  FED. R. CIV. P. 12(b)(2).  When a district court considers a Rule 12(b)(2) motion based on the contents of the complaint and supporting affidavits without an evidentiary hearing, the party asserting jurisdiction bears the burden of establishing a prima facie case of jurisdiction.  Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).  The standard or review is by a preponderance of the evidence.  Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  The court may consider affidavits submitted by both parties, but it must resolve factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction.  Universal Leather, 773 F.3d at 560; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) ("[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.").  The court must then determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction.  Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018).

## III. DISCUSSION

As noted, Defendant Aetna is an insurance company organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. Thus, Aetna is a nonresident defendant. The exercise of personal jurisdiction over a nonresident defendant is proper in North Carolina when (1) there is a basis for jurisdiction under North Carolina's long-arm statute, and (2) the exercise of personal jurisdiction complies with due process. Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011). Courts construe North Carolina's long-arm statute to be coextensive with due process, such that the two-part test collapses into the single inquiry of "whether the non-resident defendant has such 'minimum contacts' with the forum state that exercising jurisdiction over it does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). In other words, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction may be exercised specifically or generally. Here, Plaintiff does not contend that this Court can exercise general personal jurisdiction against Defendant. Indeed, Defendant's activities in North Carolina have not been continuous and systematic such that the court may exercise general personal jurisdiction over it. That is, although Defendant conducts business in North Carolina, Defendant's contacts with North Carolina are insufficient to render Defendant "essentially at home" in North Carolina for purposes of general personal jurisdiction. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 317 (1945)).

Plaintiff argues, however, that this Court may assert specific jurisdiction over Defendant

because Plaintiff's claims arose out of Defendant's purposeful contact with North Carolina. Plaintiff argues that Defendant offered health insurance to Plaintiff and other participants of the City of New York Employee Benefits Program who reside in North Carolina and Defendant contracts with handpicked medical providers to provide treatment to the Plan participants in North Carolina. Plaintiff further argues that "[i]n exchange for premiums, Aetna entered a contract where it agreed to reimburse Plaintiff's health expenses and those of other Plan participants if they became North Carolina residents and they used Aetna designated North Carolina providers. Aetna obviously and specifically sought to induce NYC Plan participants who resided in North Carolina to select their product and maintains contractual relationships with a network of providers in North Carolina." (Doc. No. 10 at 7). For the following reasons, the Court is constrained by Supreme Court precedent and controlling law to find that Plaintiff has failed to establish specific jurisdiction.

To establish specific jurisdiction, the plaintiff must show "a sufficient nexus between [the] defendants' contact with the forum state and the nature of the claims asserted." WLD, LLC v. Watkins, 454 F. Supp. 2d 426, 432 (M.D.N.C. 2006). The Fourth Circuit has applied a three-part test for determining whether specific jurisdiction exists: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state; (2) whether the plaintiff's claim arises out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (emphasis added). For specific jurisdiction to exist, all three of the above-cited factors must be satisfied. Brown v. Advanced Dig. Sols., LLC, No. 17-0034, 2017 WL 3838640, at *5 (W.D.N.C. Aug. 31, 2017). If the plaintiff meets the first two prongs, then the burden shifts to the defendant to show that exercising jurisdiction

7

would be unreasonable.  Grober v. Mako Prods., Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012).

The Supreme Court recently clarified in Bristol-Myers Squibb Co. v. Superior Court of California that, for a plaintiff to assert specific jurisdiction over a nonresident defendant, the plaintiff must show "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.  When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." 137 S. Ct. 1773, 1781 (2017) (emphasis added) (citation omitted) (bracket in original).  Most significantly, the Supreme Court expressly rejected the "sliding scale approach" used by some courts in determining whether specific jurisdiction exists.  The Supreme Court explained that, ""[u]nder this approach, the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." Id. at 1778 (internal quotation marks omitted).  In other words, "under this approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." Id. at 1781.  The Supreme Court expressly rejected this sliding scale approach, declaring, "Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction.  For specific jurisdiction, a defendant's general connections with the forum are not enough.  As we have said, "[a] corporation's 'continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." Id. (emphasis added).

Here, Plaintiff has alleged sufficient facts to meet the first prong of the three-prong test.[1]

---

[1]  In determining whether the first prong of the three-part test is satisfied, the Fourth Circuit considers "various nonexclusive factors," including: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant maintains property in the forum state; (3)

That is, it is undisputed that Defendant regularly conducts business in North Carolina and maintains offices, agents, and property in North Carolina. Moreover, as Plaintiff notes, Defendant specifically incentivized persons such as Plaintiff's parents to move to North Carolina by contracting with medical providers in North Carolina for health insurance.[2] However, Plaintiff has not met the second prong, as she has not shown that Defendant's contacts with North Carolina "form the basis of th[is] suit" for purposes of specific jurisdiction. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278–79 (4th Cir. 2009). In other words, Plaintiff has not alleged sufficient facts showing that Plaintiff's claims arose out of Defendant's specific contacts with North Carolina. Rather, the claims here first arose when Plaintiff's parents sought authorization from Defendant for Plaintiff to have assistance while still living in a residence in the State of New York. Plaintiff's alleged injuries arose out of Defendant's business practices in Connecticut and New York, not North Carolina. The Policy at issue is a group health insurance policy between Defendant and the City of New York City, New York; Defendant signed the

---

whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted); see also Universal Leather, LLC v. Koro Ar. S.A., 733 F.3d at 562–63 (reversing dismissal where some, but not all factors weighed in favor of jurisdiction).

[2] As Plaintiff notes, according to the Summary Program Description (SPD) for the NYC Plan, non-Medicare retiree participants and their beneficiaries have their choice of twelve health insurance options. (SPD, Ex. A at 30). Aetna insures one of these options. (Id.). Each option lists the "Geographic Service Area" where it is willing to provide coverage to plan participants. The SPD states: "Aetna [coverage] is available to City of New York employees and non-Medicare retirees residing in … North Carolina." (Id. at 31). Aetna's service area also includes thirteen additional states. (Id.). Thus, Aetna handpicked fourteen states in which to provide coverage, including North Carolina.

Policy at its corporate headquarters in Connecticut; the Policy provides that it is governed by New York law; Plaintiff's father was eligible to subscribe to the Policy because he had been employed by the City of New York; and Plaintiff lived in New York at the inception of the Policy and also when the claims at issue here originated. Indeed, the only reason why North Carolina became a factor is by virtue of Plaintiff's and her parents' move from New York to North Carolina. As noted, the dispositive question in addressing specific jurisdiction is whether the alleged injuries arose out of Defendant's (rather than Plaintiff's) purposeful contacts with North Carolina. Walden, 571 U.S. at 284; see also ESAB Group, 126 F.3d at 625–26 (noting that plaintiff's residence in the forum is not enough to demonstrate specific jurisdiction). Here, they did not, as the denial of the insurance claim occurred while Plaintiff's parents were still living in New York, and specific jurisdiction in North Carolina against Defendant cannot arise solely from the fact that Plaintiff and her parents moved to the forum state.

     As Defendant points out, the facts of this case are similar to those in August v. HBA Life Ins. Co., 734 F.2d 168 (4th Cir. 1984), in which the plaintiffs, a husband and wife who originally lived in Arizona, took out a medical insurance policy in Arizona from the defendant. Id. at 170. After taking out the policy, the plaintiffs moved to Virginia, and the wife sought treatment at a Virginia hospital. Id. The plaintiffs submitted a claim for the treatment to the defendant, who denied the claim. Id. The plaintiffs sued in Virginia, and the district court dismissed the action for lack of personal jurisdiction. Id. On appeal, the Fourth Circuit noted that a health insurer is not subject to personal jurisdiction simply because its insured moved into the forum state, concluding that, although such a move might be foreseeable, it does not demonstrate any purposeful activity on the part of the insurer.[3] Id. at 173 ("We conclude that the fact that

---

[3] As Plaintiff notes, the Fourth Circuit did ultimately find that a proposed rider to the policy,

defendant has insured against the expense of health care for individuals who reside in Arizona but may well move into a different state does not create a sufficient contact between defendant and any state into which they may move.").

Numerous other courts outside of the Fourth Circuit have likewise held that a medical insurer is not subject to specific jurisdiction in a forum merely because its insured chooses to move or travel into the forum.[4]  See, e.g., Hunt v. Erie Ins. Group, 728 F.2d 1244, 1246–47 (9th Cir. 1984) (no specific jurisdiction in California where medical insurer issued policy to Pennsylvania resident in Pennsylvania who moved to California, and where automobile accident occurred in Colorado); Perez v. Pan Am. Life Ins. Co., No. 96-20241, 1996 WL 511748, at *2 (5th Cir. 1996) (same in Texas for Guatemala insured); Whittaker v. Med. Mut. of Ohio, 96 F. Supp. 2d 1197, 1200–01 (D. Kan. 2000) (same in Kansas for Ohio insured, noting that"[s]everal courts have held there is no personal jurisdiction over an insurance company which sends communication into the forum state as a result of the insured's move out of state after the insurance policy was issued and the claim arose").  Significantly, these courts found that even if the insurer makes contacts with the forum state that are necessitated by virtue of the insurer/insured relationship (such as paying claims in the forum state, corresponding with medical providers in the forum state, communicating with the policyholder in the forum state,

---

sent by the defendant to the plaintiff into the forum state, which would have altered the terms of the policy, served as a "sufficient predicate for exercise of long-arm jurisdiction over" the defendant.  Unlike in August, however, there was no such solicitation by Defendant here.  Rather, any communications from Defendant in North Carolina after the denial of Plaintiff's claim arose specifically out of the fact that Plaintiff and her parents moved to North Carolina—not from any actions taken by Defendant.

[4]  Plaintiff attempts to distinguish these cases by noting that, unlike Defendant here, the insurers in those cases had no offices and/or conducted no business in the forum states.  Under Bristol-Myers Squibb, however, the fact that, here, Defendant does conduct business in North Carolina generally, is not relevant in assessing the second prong of the specific jurisdiction analysis.

11

etc.), these contacts do not subject the insurer to personal jurisdiction. As courts have noted, the obligation to communicate with the insured in the forum state arose from the unilateral act of the insured, not the insurer. Therefore, the insurer has not purposefully availed itself of the privilege of conducting business in the forum state. See Hunt, 728 F.2d at 1248 ("Plaintiff's move to California forced [the insurer] to send mail to that state concerning her claim."); Whittaker, 96 F. Supp. 2d at 1200 ("[The insurer] is obligated to carry out its insurance contract no matter in which state the treatment is sought. Therefore, the fact that [the insurer] acknowledged its obligation to pay under the insurance plan . . . is not purposeful availment.").

Additionally, the fact that Defendant's service area includes North Carolina simply does not, as Plaintiff argues, translate into a finding that Plaintiff's claims <u>arose out of</u> Defendant's contacts with North Carolina. Courts have held, however, that "merely providing out-of-state health coverage to insureds does not subject an insurer to personal jurisdiction in every foreign state in which an insured happens to obtain medical services." St. Luke's Episcopal Hosp. v. Louisiana Health Serv. & Indem. Co., No. CIV.A. H-08-1870, 2009 WL 47125, at *8 (S.D. Tex. Jan. 6, 2009); see also Matthews v. United HealthCare Servs., Inc., No. 3:19-CV-01212-E, 2020 WL 5411698, at *4 (N.D. Tex. Sept. 9, 2020) (finding no specific jurisdiction where the plaintiff purchased the health insurance policy in Panama and later moved to Texas, stating "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction"). Thus, the fact that Defendant provides coverage in North Carolina does not establish that Plaintiff's claims here arose out of that fact. As the Court has discussed, Plaintiff was living in a residence in New York State when Plaintiff filed her first claim. Any contacts Defendant made with North Carolina were caused by Plaintiff's parents' unilateral decision to move her to North Carolina after the inception of the Policy and not as a result of any

purposeful decision Defendant made to direct business activities here.  Even if Plaintiff's parents were motivated to move to North Carolina because of the availability of Aetna coverage there, the claim itself accrued when Plaintiff was still in New York.  Accordingly, Plaintiff simply cannot meet the second prong of the three-prong test for specific jurisdiction, and this action is, therefore, subject to dismissal without prejudice.[5]

The Court further observes, however, that dismissing this action may result in Plaintiff being time-barred from filing a new action in another court where that court can assert personal jurisdiction over Defendant.  Section 1631 of Title 28 of the United States Code provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.  See LeBlanc v. Holder, 784 F.3d 206, 209 (4th Cir. 2015) (stating that transfer, rather than dismissal, is appropriate when: (1) the court lacks jurisdiction; (2) the transferee court would have possessed jurisdiction over the case at the time it was filed; and (3) transfer is in the interests of justice); Trex Co. v. Canton Lumber Co., No. CIV.A. 5:01CV00009,

---

[5] The Court is sympathetic to Plaintiff and her parents.  For the first seventeen years of her life, Plaintiff's father paid premiums to Defendant in exchange for Defendant's agreement to pay for Plaintiff's medically necessary healthcare.  Plaintiff's parents decided to move to North Carolina, where Defendant clearly sells and markets health insurance, and where Defendant has chosen to enter into contracts with various medical providers.  Plaintiff, no doubt, reasonably assumed that if Defendant failed to live up to its agreement to provide health insurance benefits in North Carolina, then Plaintiff could surely sue Defendant in North Carolina and require Defendant to come to North Carolina to litigate against Plaintiff's claims.  Certainly, requiring Defendant, a large corporation who clearly conducts substantial business in North Carolina, to come to North Carolina to defend this suit, is much less burdensome than requiring Plaintiff and her parents to travel to another state to litigate her claims against Defendant.  The Court is constrained, however, by controlling precedent, to find that specific jurisdiction does not exist.

2001 WL 543227 (W.D. Va. May 16, 2001) (stating that the better course is to transfer rather than dismiss for lack of personal jurisdiction). Here, it appears to this Court that personal jurisdiction exists against Defendant in the District of Connecticut, and venue would also appear to be proper in that district under 28 U.S.C. § 1391. That is, Defendant's principal place of business is in Connecticut, Plaintiff has asserted Plaintiff's alleged injuries arose out of Defendant's business practices in Connecticut and New York, and Defendant signed the Policy at its corporate headquarters in Connecticut. Furthermore, transferring this matter (and, thus, preserving the filing date) rather than dismissing it, is in the interest of justice because a dismissal may place Plaintiff in the position of being barred by an applicable statute of limitations from re-filing the lawsuit in another jurisdiction.[6] Therefore, rather than dismissing this action, the Court will transfer this action to the District of Connecticut.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction, (Doc. No. 5), is **DENIED**. That is, although the Court lacks personal jurisdiction over Defendant, rather than dismissing this action, the Court will transfer the action to the District of Connecticut.

Signed: February 8, 2021

Max O. Cogburn Jr
United States District Judge

---

[6] The Court notes, however, that, unlike North Carolina's three-year statute of limitations for breach of contact claims, Connecticut's statute of limitations is six years. CONN. GEN. ST. § 52-576. New York's statute of limitations for breach of contract is also six years. N.Y. C.P.L.R. § 213(2). Thus, if the Court dismissed the action, Plaintiff would likely still have time to re-file in the District of Connecticut or in the proper federal district in New York before the statute of limitations runs there. In an abundance of caution, however, the Court will transfer the action to Connecticut, where personal jurisdiction no doubt can be asserted against Defendant.